# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Riverside on 05/06/2026 04:30 PM
Case Number CVRI2602762 0000166528226 - Jason B. Galkin, Executive Officer/Clerk of the Court By Maria Banuelos, Clerk

John R. Habashy, Esq. (SBN 236708)
*john@lexiconlaw.com*
**Lexicon Law, P.C.**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Telephone: 213-223-9500
E-Service Email: *eservice@lexiconlaw.com*

Andree Rozados-Quaresima, Esq. (SBN 342845)
*andree@scottdowens.com*
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

*Attorneys for Plaintiff and the Proposed Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF RIVERSIDE

| | |
|---|---|
| DAWNISHA GREER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>PANDA RESTAURANT GROUP, INC., a California corporation,<br><br>Defendant. | **CASE NO.:**  CVRI2602762<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT, 15 U.S.C. § 1681c(g)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Dawnisha Greer ("Plaintiff"), on behalf of herself and other similarly situated individuals, brings this action against Defendant, Panda Restaurant Group, Inc., ("Defendant" or "Panda Express"), and alleges:

**INTRODUCTION**

1.    This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as amended ("FCRA"), a federal statute that requires merchants to omit or mask certain credit card and debit card information on receipts provided to consumers.

2.    Despite the clear language of the statute and Defendant knowingly or recklessly failed to comply with FACTA by printing ten (10) digits of consumers' credit and debit card numbers on its receipts. FACTA permits disclosure of the last five digits only. As a result of Defendant's unlawful conduct, Plaintiff and members of the proposed Class, each of whom conducted business with Defendant during the time frame relevant to this complaint, suffered a violation of their statutory rights under 15 U.S.C. § 1681c(g). Accordingly, Plaintiff and the proposed Class members are entitled to an award of statutory damages as provided by 15 U.S.C. § 1681n.

3.    Defendant's egregious violation of FACTA by printing a majority of the card number on its receipts constitutes an invasion of Plaintiff's and the proposed class members' privacy. Courts have recognized violations of a right to secrecy of personal information as a species of privacy violation. *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.3d 923, 924–25 (9th Cir. 2019), *certified question answered sub nom. Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 14 Cal. 5th 58, 519 P.3d 992 (2022) ("The right to privacy is generally understood to encompass both a right 'to be free from unwanted intrusions,' known as the right to seclusion, as well as a right 'to keep personal information confidential,' known as the right to secrecy.").

**JURISDICTION AND VENUE**

4.    Subject matter jurisdiction is proper in this Court as the amount in controversy is not less than the jurisdictional limit of this Court.

5.    In personam jurisdiction over Defendant is proper in this Court as Defendant is registered to conduct business within the State with the California Secretary of State, operates

multiple locations in the State of California, and conducts substantial business within the State such that its affiliation is continuous and systematic.

6. Venue is proper in Riverside County because the violation giving rise to this complaint occurred at a Panda Express restaurant in this County.

## PARTIES

7. Plaintiff, Dawnisha Greer, is a natural person, sui juris, who resides in Maricopa County, Arizona.

8. Defendant is a California corporation with its principal place of business in Rosemead, California.

9. Panda Express is America's largest Asian restaurant chain.[1]

10. Defendant operates hundreds of company-owned restaurants[2], including the Panda Express located at 50-120 Cesar Chavez St., Coachella, CA 92236.

11. Defendant was founded in 1973 and has since grown to over 2,600 Panda Express restaurants worldwide with over $6 billion in total sales.[3]

## FACTUAL ALLEGATIONS

### Background of FACTA and the Proliferation of Identity Theft

12. Identity theft is a serious issue affecting both consumers and businesses. In 2024, the FTC logged more than 1.1 million identity theft reports, and received roughly 2.6 million cases of related fraud, with total losses of more than $12.7 billion.[4]

13. Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

14. Years later the FTC explained "[c]redit card numbers on sales receipts are a 'golden ticket' for fraudsters and identity thieves."

---

[1] Source: https://www.pandarg.com/our-brands (Last visited: Apr. 15, 2026).
[2] *Id.*
[3] Source: https://www.pandarg.com/about-us (Last visited: Apr. 15, 2026).
[4] Source: https://www.experian.com/blogs/ask-experian/identity-theft-statistics/#:~:text=Quick%20Answer,Key%20findings%20include (Last visited: Apr. 15, 2026).

15. FACTA was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or debit card account from a receipt provided to the consumer during a point-of-sale transaction, which, through any number of ways, can fall into the hands of someone other than the consumer.

16. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1) (the "Receipt Provision").

17. California has its own version of FACTA, codified at Cal. Civ. Code § 1747.09(a). Just like FACTA, the California statute expressly bars merchants from printing more than the last five digits of a person's debit or credit card number on any receipt provided to them:

> Except as provided in this section, no person, firm, partnership, association, corporation, or limited liability company that accepts credit or debit cards for the transaction of business shall print more than the last five digits of the credit or debit card account number or the expiration date upon any of the following:
>
> (1) Any receipt provided to the cardholder.

California enacted § 1747.09 because it recognized disclosing more than the last five digits of debit or credit card numbers on transaction receipts exposes the cardholder to a material risk of identity theft, including card fraud. Indeed, California determined the risk of harm created by disclosure of more than the last five digits of the card number on the receipt is so significant that, effective 2009, its legislature expanded § 1747.09 to bar disclosure of that information on receipts kept by the merchant, not just receipts provided to the cardholder. *See* Cal. Civ. Code § 1747.09(a)(2) and (3), and (d).

18. Likewise, Congress enacted FACTA's prohibition against printing more than the last five digits of credit or debit card numbers on receipts "to prevent criminals from obtaining easy access to such key information" [S. Rep. No. 108-166 at p.3], because disclosure of that information on the receipt exposes cardholders to a material risk of identity theft, including card

fraud. Here, Defendant printed *ten* (10) digits – the first six and last four – of Plaintiff's sixteen-digit card number on her receipt.

19.     After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

20.     FACTA was widely publicized among retailers and the payment card industry. For example, on March 6, 2003, in response to earlier state legislation enacting similar requirements, then-CEO of Visa USA, Carl Pascarella, explained;

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether.... The first phase of this new policy goes into effect July 1, 2003, for all new terminals ...."

21.     Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

22.     Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt."[5]

23.     Regardless, a handful of large retailers did not comply with their contractual obligations to the card companies and FACTA's straightforward requirements. Accordingly, Congress passed the Credit and Debit Card Receipt Clarification Act of 2007, to make a temporary change to the definition of willful noncompliance with respect to violations *limited to the printing of card expiration* dates on receipts.

24.     Importantly, the Clarification Act did not amend FACTA to allow disclosure of card expiration dates. Instead, it simply provided amnesty for certain past violators up to June 3, 2008. Moreover, the amendment did not affect FACTA's prohibition against disclosing more than the last five digits of the card number on the receipt.

---

[5] www.cs.miami.edu/home/burt/learning/Csc598.073/notes/rules_for_visa_merchants.pdf (Last visited: Apr. 15, 2026).

25.     In the interim, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> "Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect." [6]

26.     Likewise, American Express advised:

> "Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers."[7]

27.     Similarly, MasterCard required:

> "A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters." [8]

---

[6]https://bd.visa.com/content/dam/VCOM/global/support-legal/documents/bulletin-pan-truncation-best-practices.pdf (Last visited: Apr. 15, 2026).

[7]https://cdn2.hubspot.net/hubfs/5419069/FastTransact_February2019/PDF/AMEX-MerchantPolicyOptBlue-10.2017.pdf (Last visited: Apr. 15, 2026).

[8]https://www.mastercard.us/content/dam/public/mastercardcom/na/global-site/documents/transaction-processing-rules.pdf (Last visited: Apr. 15, 2026).

28.     In summary, FACTA acts as a remedial statute that authorizes statutory damages to **deter violations and protect consumers** without regard to the "beneficial interest" standard erroneously implied in *Limon* and *Muha*.[9]  It expressly prohibits disclosing more than the last five digits of credit and debit card numbers, principally to help protect persons from identity theft.

29.     Here, Defendant's disclosure of ten (10) digits of Plaintiff's card number constitutes an unauthorized disclosure of Plaintiff's sensitive financial information into an uncontrolled environment.

30.     The risk of identity theft caused by disclosing 62.5% (10 of 16 digits) of the PAN[10] number on customers' transaction receipts is substantial, as it enables a thief who finds the receipt to easily commit fraud.

31.     "Once criminals discover or steal a working BIN, or a newly opened card number range[,][t]hey use random-number generators and algorithms to fill in the rest of the card number, expiration date and verification code, generating hundreds or thousands of fake accounts. They then enlist bots to test the results — preferably on websites with weak security that won't lock them out after multiple failed attempts." [11]

32.     These kinds of attacks have increased. Visa recently reported "enumeration attacks" which, like the distributed-guessing attack above, involve fraudsters using automated computer programs to systematically submit multiple variations of card data (including the card number, expiration date, and security or CVV code) to try to correctly guess a working set of numbers, are

---

[9] "Because both the *Limon* and *Muha* courts concluded that the public standing exception did not apply to FCRA cases and the FCRA did not otherwise confer standing on a plaintiff who had not suffered a concrete injury, they concluded the uninjured plaintiffs in each case lacked standing under the FCRA because they failed to demonstrate a beneficial interest. As amicus explain, however, neither the California Constitution nor the Legislature has ever established a heightened default requirement for standing for those who seek access to California's courts of general jurisdiction." *Parsonage v. Wal-Mart Associates, Inc.* (2026) 341 Cal. Rptr. 3d 447, 463, review filed (Mar. 16, 2026) (citations omitted).

[10] "A Primary Account Number (PAN), also known as a payment card number, is the series of numbers embossed or printed on the front of a credit, debit, or prepaid card. This number is assigned by a financial institution and identifies the issuer and the specific account. This number ensures that the card is properly linked to the correct account when you send money to a bank account." https://www.westernunion.com/blog/en/gb/what-is-a-pan-card-number/ (Last visited: Apr. 15, 2026).

[11] https://view.ceros.com/mastercard-europe/c-and-i-bin-attack-1/p/1 (Last visited: Apr.15, 2026).

CLASS ACTION COMPLAINT | 7

on the rise. (Visa Business News, Best Practices, Sept. 13, 2021) Visa continues to report that "[a]gain, as in years past, enumeration (i.e., the programmatic, automated testing of common payment data elements via eCommerce transactions to effectively guess the full payment account number, CVV2, and/or expiration date) remains among the top threats to the payment ecosystem." (Visa Biannual Threats Report at p. 7, December 2022).[12]  This is further confirmed by the PCI Security Standards Council and National Cyber-Forensics and Training Alliance October 21, 2020 bulletin, which expressly describes these enumeration attacks as "an ongoing threat that requires urgent attention."

33.    A BIN attack starts with one good card: the attacker usually starts with a known valid card number. Using the known card's BIN, the fraudster creates new card numbers by altering the remaining digits — often with the help of automated tools or macros. The attacker also attempts to guess the 3-digit security code on the back of the card (also known as the CVV2). They run transactions using various combinations, typically on merchant websites with minimal fraud prevention controls. If a transaction is approved, the fraudster knows they have hit a valid combination, and that card is now a target for future fraud. If it is declined, the card is discarded, and they move on.[13]

34.    Defendant's practice of printing ten (10) digits of consumers' credit and debit card numbers on its receipts enhances a thief's ability to conduct these attacks because it arms the identity thief with information he would not otherwise be privy to.

35.    A thief can deduce missing account information needed to commit fraud via "phishing" inquiries, *i.e.*, using the account number digits and information about the cardholder's account learned from the receipt by contacting the consumer posing as the store or bank and convincing the consumer the call is legitimate, thereby extracting more data. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) (data FACTA prohibits merchants from printing on the receipt can "bolster the credibility of a criminal" in "phishing scams").

---

[12]https://usa.visa.com/content/dam/VCOM/global/support-legal/documents/pfd-biannual-threats-report_december-2022.pdf (Last visited: Apr. 15, 2026).

[13] www.sbsavings.bank/blog-articles/understanding-bin-attacks-and-how-to-stay-safe/ (Last visited: Apr. 15, 2026).

36.    Disclosing FACTA-prohibited information on the receipt also gives thieves multiple ways to access it. In addition to finding the receipt if discarded or lost, expert testimony to Congress established printing the information where it can be seen risks its capture by "unscrupulous employees" or "shoulder-surfers" (persons standing nearby) who see the receipt.[14]

37.    Debit and credit card numbers are valuable information that is routinely sold to criminals. *See* https://www.cbsnews.com/newyork/news/credit-card-information-stolen-12-websites-manhattan-da-alvin-bragg/ (card information sold on 12 websites). Defendant's mishandling of Plaintiff and the class members' card numbers, thus, constitutes an economic injury with a monetary value equivalent to the price at which fraudsters buy and sell this information.

**Defendant's Prior Knowledge of FACTA**

38.    As further detailed herein, Defendant had actual knowledge of FACTA's truncation requirement long before it began failing to comply with FACTA.

39.    Panda Express is America's largest Asian restaurant chain[15] with sales of over $6 billion annually.[16]

40.    Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the Receipt Provision. Defendant could very easily have done the same.

---

[14] "The epidemic of identity theft is growing because sensitive, personal information is acquired very easily, and the issuers of credit are often less than careful in verifying and authenticating the true identity of the applicant. There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, dumpster-diving, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), ***unscrupulous employees***, phone fraud, Internet fraud (phishing and pharming), spyware, hackers, unprotected wireless networks, unethical use of public documents that contain personal information, needless display of the Social Security numbers on government documents (such as; military and Medicare identification cards); the transfer sale and sharing of Social Security numbers and other data among financial institutions, credit reporting agencies and data brokers." Identity Theft and Data Broker Services: S. Hrg. 109-1087 Before the Committee on Commerce, Science, and Transportation, 109th Cong. Sess. 1 (May 10, 2005) (emphasis added).

[15] Source: https://www.pandarg.com/our-brands (Last visited: Apr. 15, 2026).
[16] Source: https://www.pandarg.com/about-us (Last visited: Apr. 15, 2026).

41.    Upon information and belief, it would have taken Defendant a mere 30 seconds or less to run a test receipt in order to determine whether its point-of-sale system was violating FACTA before placing the system into use.

42.    A receipt showing ten (10) digits of a card number would appear unusual to an observant employee—even one not specifically trained on FACTA—because it unlawfully discloses almost all of the card number, rather than a truncated version as required under FACTA.

43.    Numerous state statutes also require Defendant to protect customer financial information when operating its restaurant locations, such as the California Song-Beverly Credit Card Act, Cal. Civ. Code § 1747.09, which, like FACTA, prohibits businesses from printing transaction receipts that disclose the expiration dates or more than the last five digits of credit and debit cards.

44.    Moreover, unlike the U.S. Constitution, the California Constitution expressly guarantees privacy. *See* Article I, Section 1. ("All people are by nature free and independent and have inalienable rights. Among these are … pursuing and obtaining safety, happiness, and privacy.").

45.    This explicit right to privacy was added by constitutional amendment in 1972 and has been interpreted broadly. The California Supreme Court has recognized that it protects individuals from both governmental intrusions and certain private-sector practices. Financial privacy has specifically been recognized within this scope. *See Valley Bank of Nev. v. Superior Court* (1975) 15 Cal.3d 652 (holding that bank customers have a constitutionally protected privacy interest in their financial records).

46.    Defendant was not only clearly informed not to print more than the last five digits of credit or debit cards, but was contractually prohibited from doing so. Defendant accepts credit and debit cards from all major issuers, such as Visa, MasterCard, American Express and Discover Card. Each of these companies sets forth requirements that merchants such as (and including) Defendant must follow, including FACTA's redaction and truncation requirements found in the Receipt Provision. *See, e.g.*, *McClure v. Cerati* (1948) 86 Cal.App.2d 74, 81 (a person who signs and executes a written contract "must be presumed to have read and understood its provisions.").

47.    Given the size of Defendant's business and its years of experience, and the various state and federal regulations governing its business, at a minimum Defendant was acting with reckless disregard of FACTA's requirements and purpose when it printed credit and debit card

transaction receipts that disclosed more than the last five digits of the credit or debit card account number. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (holding that a defendant is liable for willfully violating Fair Credit Reporting Act where a violation is committed with "reckless disregard" for the law).

48.     Given Defendant's scale, resources, and ongoing digital modernization initiatives, compliance with a 20-year-old federal statute requiring truncation of payment card numbers is technologically straightforward and plainly within Defendant's operational capabilities.

49.     Defendant also acquired further knowledge about the importance of protecting its customers' sensitive and private information when it was sued by a class asserting claims stemming from a data breach in the matter *Halliday, et al. v. Panda Restaurant Group, Inc*, Case No. 24STCV12667 (Super. Ct. Los Angeles Cnty., 2024).

50.     Upon information and belief, Defendant demonstrated its knowledge of FACTA by previously complying with its requirements and properly redacting credit and debit card account numbers.

51.     Despite the foregoing, Defendant is now violating FACTA by printing the first six and last four digits of customers' payment card numbers on transaction receipts at one or more of its restaurant locations in the United States, including but not limited to locations in California.

52.     Defendant's violation was not accidental or technical. It occurred in the context of a centralized and modernized enterprise by an organization that knew or should have known of FACTA's requirements for nearly two decades.

### Plaintiff's Factual Allegations

53.     This case involves Defendant's unlawful printing and dissemination of sensitive financial information on a receipt designed to leave its control, a harm Congress specifically enacted FACTA to prevent. This case does not involve the voluntary submission of personal information to a single, known recipient, as in employment-application cases.

54.     On or about March 1, 2026, while traveling to her home state of Arizona from an employment obligation in California, Plaintiff used her personal debit card to purchase food at the Panda Express located at 50-120 Cesar Chavez St., Coachella, CA 92236.

55.     After making her purchase, Plaintiff was presented with an electronically printed receipt showing ***the first six and last four digits*** of her debit card number.

56.     The disclosure of ten (10) digits of Plaintiff's card number on the receipt compromised the privacy of Plaintiff's sensitive and private financial information.

57.     Defendant's receipt showing ten (10) digits of Plaintiff's debit card number provides sufficient information to enable an identity thief to defraud Plaintiff.

58.     Printed point-of-sale receipts are in fact physical documents designed to leave the merchant's possession and to be handled, transported, reviewed, and often discarded in public or semi-public settings.

59.     As a result of Defendant's reckless disregard of the law, Plaintiff has been burdened with the additional task of safeguarding her receipt.

60.     The printing of ten (10) digits of Plaintiff's card number was also a breach of confidence in the safe handling of Plaintiff's sensitive financial information, as well as a breach of an implied bailment, and necessitated Plaintiff's keeping and safeguarding the receipt.

61.     The printing of ten (10) digits (62.5%) of Plaintiff's card number exposed her to the risks of the following types of fraud, including but not limited to the following: (1) Card-Not-Present (CNP) fraud; (2) Phishing & social-engineering attacks; (3) Account takeover / identity fraud; (4) Card cloning / card-present fraud;  (5) Resale of data on dark markets; and (6) Fraudulent "merchant" chargebacks / disputes.

62.     Plaintiff's debit card number constituted sensitive personal financial information with independent economic value derived from its secrecy and exclusive control. California law recognizes that the unauthorized disclosure of personal identifying information deprives consumers of the economic value of that information. *See Valley Bank of Nevada*, 15 Cal. 3d at 656 ("the right of privacy extends to one's confidential financial affairs as well as to the details of one's personal life."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) ("California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 931 (N.D. Cal. 2015) ("The court accepts as true Plaintiffs' ascription of some degree of intrinsic value to their personal information for this motion").

63.     The value of confidential information is destroyed or diminished once it is unlawfully disclosed. *Hill v. Nat'l Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 27 ("Obviously,

sensitive personal information may be misused even if its disclosure is limited"); *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 881, as modified (Oct. 15, 2003) ("Once the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data.").

64.    By printing and disclosing ten (10) digits of Plaintiff's debit card number in violation of FACTA, Defendant converted Plaintiff's uncompromised debit card data into tainted, at-risk information, thereby diminishing its economic value and causing Plaintiff to suffer actual economic injury, irrespective of whether fraudulent charges have yet occurred.

65.    Furthermore, Plaintiff also experienced loss or deprivation of money and/or property, *i.e.*, economic injury, as a direct and proximate result of Defendant's unlawful actions.

66.    At all times relevant hereto, Defendant included the costs related to protecting customer financial information in the price of the items it sold to Plaintiff and other consumers.

67.    Because Plaintiff paid the full price for the subject items to Defendant, which included costs related to protecting customer financial information, and the subject transaction did not comply with the law, Plaintiff did not receive the full benefit for which she paid.

### Defendant's Specific Violative Acts and Omissions

68.    Plaintiff is informed and believes, and on that basis alleges, that Defendant implements, oversees, and maintains control over the same uniform debit and credit card payment processing systems, policies, practices, and procedures at all its stores – including, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendant used to process the transactions at issue here.

69.    Plaintiff is informed and believes, and on that basis alleges, that Defendant mandates the use of the same point-of-sale system at all of its restaurants in the US, including the hardware and software equipment.

70.    Plaintiff is informed and believes, and on that basis alleges, the point-of-sale system used by Defendant records and stores all payment transactions and has the ability to print duplicate copies of all payment receipts provided to customers.

71.    Plaintiff is informed and believes, and on that basis alleges, that notwithstanding its knowledge of the requirements of FACTA, Defendant, during the time frame relevant to this

action, undoubtedly issued thousands of point-of-sale receipts disclosing more than the last five digits of its customers' debit or credit card numbers.

72.    Defendant maintains centralized control over point-of-sale systems and have made meaningful enterprise-wide digital infrastructure investments. Accordingly, the printing of Plaintiff's receipt showing ten digits of her card account number was not an isolated store-level error but the foreseeable result of corporate-level configuration decisions.

73.    By ignoring the requirements of this important federal statute, in an environment already ripe for identity theft and other evils, Defendant has breached Plaintiff's and the proposed Class members' privacy. Defendant's conduct alleged herein resulted in the potential disclosure of Plaintiff's and the proposed Class members' private financial information to the world, including, but not limited to, persons who might find the receipts in the trash or elsewhere, dedicated identity thieves who thrive in environments such as Defendant's various locations, or any of Defendant's several agents or employees who handled the receipts.

74.    In apparent recognition of the importance of maintaining consumer privacy, Defendant makes numerous public representations concerning its efforts to protect its customers' personal and financial information. More specifically, Defendant represents that it "respect[s] your privacy and [is] committed to protecting it through our compliance" with its publicly-touted 'privacy policy."[17] The policy specifically notes that it includes information collected from customers "visiting our stores" and represents that Defendant will "keep your personal information private" and not share personal information "unless such disclosure is necessary."[18]

75.    Defendant further represents that it "take[s] reasonable measures to safeguard against unauthorized disclosures of personal information . . . ."[19] Defendant also expressly acknowledges that its customers may provide "financial information" when they "visit our restaurants" and that "[i]nformation collected may include . . . payment information" which it defines as being among the types of "personal information" it collects. [20] Defendant goes on to

[17] Source: https://www.pandarg.com/privacy-policy (Last visited: Apr. 15, 2026).
[18] *Id.*
[19] *Id.*
[20] *Id.*

note that "protecting" customers' "personal information" (which Defendant defines as including "payment information") "is important to us."[21]

76.     Defendant also acknowledges that certain information it collects from its customers may be considered "'Sensitive Personal Information' within the meaning of [the California Consumer Privacy Act, as amended by the California Privacy Rights Act], including: **credit card information** (for billing and transactional purposes in connection with providing products and services) . . . ."[22] (Emphasis added.) Defendant then represents that it "only uses and discloses Sensitive Personal Information as necessary in connection with the performance of services and the provision of goods, compliance with federal, state, or local laws, and as otherwise permitted by California Privacy Law."[23]

77.     Defendant's violations of FACTA are at odds with each of the foregoing representations set forth in its privacy policy.

78.     Upon information and belief, Defendant uses standardized point-of-sale systems, receipt printers, and compliance protocols. As a sophisticated, multi-restaurant operation, Defendant employs centralized pricing and operational models designed to recover not only the cost of food and beverages sold, but also the indirect costs associated with processing customer transactions at the checkout counter.

79.     Retail pricing in the restaurant industry necessarily incorporates operational overhead, including administrative and store-level expenses required to complete sales transactions. Such expenses include store supplies and equipment maintenance, receipt printers, thermal paper, and related point-of-sale infrastructure. These are not discretionary or incidental costs, but recurring and unavoidable expenses inherent in in-person retail operations.

80.     Printed receipts require consumable materials, including thermal paper rolls and printer components, which retailers routinely purchase and replace as part of ordinary business operations. Receipt paper and related POS supplies are standard, recurring business expenses that are necessarily recouped through aggregate consumer purchases.

81.     Compliance with FACTA and California's Song-Beverly Act is effectuated at the point of sale through properly configured receipt-generation systems. Such compliance requires

---

[21] *Id.*
[22] *Id.*
[23] *Id.*

appropriate software and hardware settings to truncate card numbers and omit expiration dates from printed receipts.

82.    When consumers make purchases at a Panda Express restaurant, a portion of the purchase price necessarily funds the transaction-processing infrastructure, receipt supplies, and compliance mechanisms that Defendant represent it maintains in order to operate lawfully. Where Defendant issues noncompliant receipts, consumers have paid for—but did not receive—the lawful execution of a core transactional function. Defendant's public compliance representations, corporate structure, and standard cost-allocation practices support the inference that receipt compliance is an integral, paid-for component of every in-store transaction.

83.    Simply put, Defendant's violation of FACTA deprived Plaintiff of the economic value of her financial and personal identifying information.

84.    Finally, by printing numerous transaction receipts in violation of a well-established federal statute, Defendant created—paraphrasing the words of the Honorable Judge Posner—"an unjustifiably high risk of harm that was either known or so obvious that it should have been known" to Defendant. *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

## CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action on behalf of herself and the following Class pursuant to Cal. Code Civ. Proc. § 382:

> All persons in the United States who engaged in one or more transactions using a credit or debit card at any of Defendant's restaurants in the United States at a time when the point-of-sale systems utilized by Defendant to process customer transactions were programmed to print on the customer's transaction receipt more than the last five (5) digits of the credit or debit card number used in the transaction, within the two (2) years prior to the filing of the Plaintiff's Complaint.

86.    Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

87.    Based on Defendant's sales figures, members of the proposed Class are undoubtedly so numerous that joinder of all members would be impracticable.

88. There are questions of law and fact common to all the members of the proposed Class that predominate over any questions affecting only individual members. They include:

a) Whether Defendant and/or its agents generated customer transaction receipts displaying more than the last five digits of customer debit or credit card numbers, violating FACTA;

b) Whether Defendant's conduct was knowing or reckless;

c) Whether Defendant is liable for statutory damages, and the amount.

89. Plaintiff is committed to fairly and adequately protecting the interests of the proposed Class. She has no interests antagonistic to those of the proposed Class and has retained attorneys experienced in class and complex litigation.

90. A class action is an appropriate method to resolve this controversy because: (i) a class action promotes efficiency by resolving the class members' common claims in one action, eliminating the need for the courts to resolve the same factual and legal issues over and over, thus reducing the burden on the courts; (ii) a class action promotes fairness and justice, as it enables class members who do not know they have a claim, or who cannot find counsel or lack the ability to prosecute their claim on their own, to vindicate their rights and get relief; and (iii) a class action is necessary to effectuate FACTA's deterrent goals.

91. Plaintiff does not anticipate any difficulty in the management of this litigation.

**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681c(g)**

92. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

93. 15 U.S.C. §1681c(g)(1) states as follows:

"Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

94. This section applies to any "device that electronically prints receipts" (hereafter "Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

95. As described, *supra*, Defendant employs said Devices for point-of-sale transactions at its stores in the United States.

96. On or before the date on which this complaint was filed, Defendant provided Plaintiff and members of the proposed class with receipts that violated the Receipt Provision.

97.    At all times relevant to this action, Defendant was aware of both the Receipt Provision as well as the requirement to comply with said provision.

98.    Notwithstanding the fact that FACTA has been in effect for twenty years, the three-year period to comply with FACTA when it was enacted, and having knowledge of the Receipt Provision, Defendant knowingly or recklessly violated the Receipt Provision.

99.    By printing ten (10) digits of Plaintiff's debit card number on her receipt, Defendant caused Plaintiff to suffer a heightened risk of identity theft, compromised the privacy of Plaintiff's personal and private financial information, exposed Plaintiff's private information to those of Defendant's employees who handled the receipts, and forced Plaintiff to take action to prevent further disclosure of the private information displayed on the receipts.

100.    As a result of Defendant's willful violations of the FCRA, specifically FACTA, Defendant is liable to Plaintiff and the class members pursuant to 15 U.S.C. § 1681n, for statutory damages, punitive damages, attorney's fees and costs.

* * *

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and in favor of the proposed Class, and against Defendant, as follows:

a)  Granting certification of the Class;

b)  Awarding statutory damages;

c)  Awarding punitive damages;

d)  Awarding attorneys' fees, litigation expenses and costs of suit; and

e)  Awarding such other and further relief as the Court deems proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ John R. Habashy

John R. Habashy, Esq.
*john@lexiconlaw.com*
**Lexicon Law, P.C.**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071

CLASS ACTION COMPLAINT | 18

Tel: 213-223-9500

Andree Rozados-Quaresima, Esq.
*andree@scottdowens.com*
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

Electronically Filed by Superior Court of California, County of Riverside on 06/12/2026 02:04 PM
Case Number CVRI2602762 0000166528228 - Jason B. Galkin, Executive Officer/Clerk of the Court By Maria Banuelos, Clerk

**CM-010**

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY**    STATE BAR NUMBER: 236708 | | **FOR COURT USE ONLY** |

**ATTORNEY OR PARTY WITHOUT ATTORNEY**     STATE BAR NUMBER: 236708

NAME: John R. Habashy, Esq.

FIRM NAME: Lexicon Law, PC

STREET ADDRESS: 633 W. 5th Street, 28th Floor

CITY: Los Angeles,     STATE: CA     ZIP CODE: 90071

TELEPHONE NO.: (213) 223-5900     FAX NO.: (888) 373-2107

EMAIL ADDRESS: john@lexiconlaw.com; eservice@lexiconlaw.com

ATTORNEY FOR (name): Plaintiff, Dawnisha Greer

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**

STREET ADDRESS: 4050 Main Street

MAILING ADDRESS:

CITY AND ZIP CODE: Riverside 92501

BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
Dawnisha Greer v. Panda Restaurant Group, Inc.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited**    [ ] **Limited** | [ ] Counter    [ ] Joinder | CVRI2602762 |
| (Amount demanded exceeds $35,000)   (Amount demanded is $35,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** (Cal. Rules of Court, rules 3.400–3.404) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Asbestos** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Comprehensive groundwater adjudication (47) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/Unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Fraud (16) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| [x] Other non-PI/PD/WD tort (35) | [ ] Petition re arbitration award (11) | |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | **Employment Development Department (EDD)** | |
| | [ ] EDD decision review (48) | |

CM-010

2.  Is this case complex under rule 3.400 of the California Rules of Court?    ☒ Yes    ☐ No

    If the case is complex, mark the factors requiring exceptional judicial management:

    a.  ☐  Large number of separately represented parties

    b.  ☒  Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

    c.  ☐  Substantial amount of documentary evidence

    d.  ☐  Large number of witnesses

    e.  ☐  Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

    f.  ☐  Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):*

    a.  ☒  monetary

    b.  ☒  nonmonetary; declaratory or injunctive relief

    c.  ☒  punitive

4.  Number of causes of action *(specify):* 1. Violations of the Fair and Accurate Credit Transactions Act 15 U.S.C. § 1681c(g)

5.  Is this case a class action suit?    ☒ Yes    ☐ No

6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 05/06/2026

John R. Habashy, Esq.
_____
(TYPE OR PRINT NAME)

▶/s/ John R. Habashy
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

---

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---

**Civil Case Cover Sheet**



**CM-010**

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case
Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

---

Rev. January 1, 2026

**Civil Case Cover Sheet**

**CM-010**, Page 3 of 3

**For your protection and privacy, please press the Clear
button after you have printed the form.**

**Print**     **Save**     **Clear**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PANDA RESTAURANT GROUP, INC., a California corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DAWNISHA GREER, individually and on behalf of a class of similarly situated individuals,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Riverside Historic Courthouse

4050 Main Street, Riverside CA 92501

CASE NUMBER:
*(Número del Caso):* CVRI2602762

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John R. Habashy, Esq.; Lexicon Law, PC 633 W. 5th Street, 28th Floor Los Angeles, CA 90071; (213) 223-5900

DATE:
*(Fecha)* 5/6/2026

Clerk, by M. BANUELOS, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]
GC68150(g)

[SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE EUREKA]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ] [ Save this form ] [ Clear this form ]

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| | |
|---|---|
| CASE TITLE: Greer v. Panda Restaurant Group, Inc. | Department 1 |
| CASE NO.: CVRI2602762 | F I L E D SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE |
| DATE: May 12, 2026 | MAY 12 2026 |
| PROCEEDING: Class Action Case Management Order #1 | D. Board |

Unless otherwise ordered, this Case Management Order ("CMO") shall govern the management of this case.

## A.    IN GENERAL

1. The Court finds that this is a complex case. *Cal. Rules of Court*, rules 3.400(c)(6), 3.403(b). The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference or status conference.

2. This case has been assigned to Department 1, Judge Harold W. Hopp, for all purposes, including case management, law and motion, and trial.

3. The plaintiff shall serve a copy of this CMO on any defendant who has not yet appeared, and shall file proof of service promptly thereafter.

## B.    CASE MANAGEMENT AND THE CASE PROGRESSION PLAN

1. The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by *California Rules of Court*, rule 3.713(b). Accordingly, this case is exempt from those case disposition time goals. *Id.*, rule 3.714(c)(1). With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. *Id.*, rule 3.714(c)(2).

2. Prior to the next Status Hearing or Case Management Conference, counsel for the parties shall meet and confer regarding the joint statement required by RSC Local Rule 3160.

3. Not later than five court days in advance of the next Status Hearing or Case Management Conference, all parties that have appeared shall file the joint statement required by rule 3160 instead of Judicial Council form CM-110 [case management statement]. In addition to the items listed in Rule 3160, the statement shall:

   a. Advise the Court whether any of the parties or their counsel are aware of any other class action, putative class action, or other type of representative or collective action in this or any other jurisdiction that asserts claims similar to those here on behalf of

a class, putative class, or other group of individuals that in any way overlaps with the putative class alleged here.

b. Describe the parties' case progression plan, which shall include at least (i) a statement as to whether the parties agree to pursue mediation and (ii) a plan of the informal discovery and any formal discovery to be conducted in preparation for mediation, class certification, or both.

4. At least five court days before any subsequent Case Management Conference, Status Hearing, or Trial Setting Conference, the parties shall file a joint statement that:

a. Describes the status of the case, including (i) the results of any mediation or other settlement efforts, (ii) the degree to which the case progression plan has been implemented and (iii) any changes or additions to the case progression plan; and

b. Identifies any issues or concerns that either party wishes to discuss with the Court.

5. If mediation is unsuccessful, the case progression plan shall be expanded prior to the next status conference to include (a) a pre-certification discovery schedule, (b) a deadline for filing a motion for class certification, and a proposed briefing schedule for that motion.

6. The Court will rely on the parties' joint statements in conducting Case Management Conferences and Status Conferences and, where appropriate, will make orders without holding a formal hearing.

## C.  ALTERNATIVE DISPUTE RESOLUTION

The court expects the parties to engage in private mediation at the earliest practicable time, i.e., as soon as all parties have obtained – preferably through informal means – sufficient information from the opposing party(s) to enable them to engage in meaningful mediation. If the parties believe that another form of alternative dispute resolution is appropriate for this action, they should explain this in their joint reports as soon as practicable.

## D.  DISCOVERY

1. Counsel are encouraged to engage in informal discovery rather than relying on formal discovery. The Court does not stay or otherwise limit informal discovery.

2. The discovery stay under RSC Local Rule 3160(B) is vacated as to interrogatories concerning the identity of and contact information for members of the putative class.  Any such interrogatories propounded by the plaintiff to the defendant shall be accompanied by (a) a proposed *Belaire West* notice, (b) the name of a proposed third-party administrator, and (c) a proposal regarding the allocation of the cost of the notice.

3. All other formal discovery concerning class-certification issues is stayed pending further order of the court. Requests for leave to propound formal discovery concerning class-certification issues may be made either by submitting a declaration and proposed order or

by making an oral request at status conferences or at informal conferences with the Court in accordance with paragraph 5 below. The Court will grant such a request if the applicant demonstrates:

    a.    That the parties have met and conferred to discuss both (i) the scope and sources of the information needed either to permit a meaningful mediation or to support or oppose a class-certification motion and (ii) whether the parties would agree to exchange that information informally;

    b.    That the parties were unable to reach an agreement; and

    c.    The discovery is reasonably necessary either (i) to permit a meaningful mediation or (ii) to make or oppose a certification motion.

4.    All formal discovery concerning solely the merits of the plaintiff's claims (as opposed to whether a class should be certified to prosecute those claims) is stayed until a motion regarding class certification has been granted.

5.    No discovery motions may be filed without leave of court. If a discovery dispute arises:

    a.    The parties shall meet and confer either in person or by telephone in a good-faith effort to resolve the dispute. If, despite that effort, the parties are unable to resolve the dispute, then counsel shall contact the clerk of this department to schedule an informal conference at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion.

    b.    The conference may be conducted by telephone or in person, as counsel prefer. Prior to the conference, the party seeking relief shall provide the clerk of this department with a brief (two-to-three sentence) description in writing of the reason for the conference. If the conference is to be by telephone, counsel shall also provide the clerk with the call-in telephone number and passcode.

    c.    If the opposing side will not agree to participate in the informal conference, then the moving party shall bring an ex parte application for leave to file a discovery motion.

E.    <u>REQUESTS FOR DISMISSAL OF CLASS CLAIMS</u>

If the plaintiff seeks to dismiss or otherwise abandon either the entire action, any cause of action asserted on behalf of the putative class, or any defendant against whom any cause of action is asserted on behalf of the class, Court approval must be sought as follows:

1.    The plaintiff shall not use the preprinted Request for Dismissal, Judicial Council form CIV-110. Instead, the request shall be made by the submission to the court of an Application for Dismissal that includes: (a) a declaration from plaintiff's counsel; (b) a declaration from each named plaintiff; and (c) a proposed order of dismissal.

2.    The declarations shall state whether the plaintiff has attempted to settle the plaintiff's individual claims, and if so, the status of those negotiations.

3.    The declarations must comply with *California Rules of Court*, rule 3.770(a), pertaining to any consideration being paid for the dismissal.  Because the purpose of that rule is to avoid collusion between the parties to the detriment of the potential class members, the showing must be made by declaration rather than by stipulation.

4.    If the dismissal is in exchange for any consideration other than a waiver of costs, the declaration of plaintiff's counsel shall authenticate a fully executed copy of any settlement agreement. In addition, the declaration shall address each of the following:

   a.    What is the form and value of the consideration, how was it calculated, and to whom is it to be paid?

   b.    Is the plaintiff required to execute a release in addition to a dismissal? If so, what is the scope of that release?

   c.    How is the retention of that consideration either by the plaintiff or the plaintiff's attorney consistent with their respective fiduciary duties to the class? In particular, if the plaintiff has negotiated a settlement of any individual claim against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of consideration other than a waiver of costs, the declaration shall as to each such individual claim:

      i.    Estimate both (A) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff would be awarded if the action were entirely successful at trial on that claim, and (B) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and other attendant risks;

      ii.    Briefly describe the basis for those estimates; and

      iii.    Describe the form and value of the consideration to be paid in satisfaction of that claim.

5.    The declarations by plaintiff and plaintiff's counsel shall state (a) whether the declarant has ever informed any of the putative class members – whether formally or informally, orally or in writing, individually or as a group – of the preparation, filing, or pendency of the action, and (b) if so, both (i) the nature and extent of that information and (ii) whether the declarant knows or has a means of discovering the name and mailing address of the putative class member or members to whom that information was communicated.

6.    If the dismissal is in exchange for no consideration other than a waiver of costs, the request shall explain the reason for the dismissal. If the reason is that the named plaintiff no longer wishes to prosecute the case on behalf of the putative class:

    a.    The plaintiff shall explain the reason for his or her change of heart. Simply stating that the plaintiff no longer wishes to represent the class is not sufficient.

    b.    The plaintiff's counsel shall explain why counsel wishes to abandon the class claims rather than locate a new class representative.

7.    Any request shall explain why the putative class members will not be prejudiced by the requested dismissal.

## F.    MOTIONS & APPLICATIONS GENERALLY

1.    A party making an ex parte application must, inter alia, "[a]ttempt to determine whether the opposing party will appear to oppose the application." *Cal. Rules of Court*, rule 3.1204(a)(2). That attempt shall be made by telephone. Written notice asking the opposing party to inform the moving party of the opposing party's intentions is not sufficient.

2.    A party desiring an order shortening time for notice of a motion shall not bring an ex parte application for such an order until that party has first (a) reserved the earliest available hearing date for the motion and (b) filed the motion. The Court will not deem the ex parte application as constituting the motion to be heard.

## G.    MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT

If the matter is settled, a motion for preliminary approval of the settlement must be filed. All applications for such approval shall be made by noticed motion, and shall be supported by declaration. In order to aid the Court's review, all declarations filed in support of a motion for preliminary approval shall include appropriate headings that identify the specific paragraph of Section G which is being addressed. For example, counsel's estimate of the number of individuals in the class should be preceded by a heading that identifies G(3)(a)(1), and counsel's estimate of the recovery by the average class member if the settlement were approved should be preceded by heading that identifies G(3)(a)(iv).

1.    Settlement Agreements in General

    a.    The settlement agreement shall not provide that any order, notice, form, or judgment shall include any provision that this order prohibits from being included in such a document. (See §§ G.3 through G.9, *infra*.)

    b.    The settlement agreement shall be written, signed by all necessary parties, and filed, either in the form of a separate stipulation or as an authenticated attachment to a declaration of counsel.

2.    Notices of Settlement

Regardless of the terms of the proposed settlement, counsel shall not file a Notice of Settlement of Entire Case (Judicial Council form CM-200).

3.    The Motion in General

a.    The motion shall be supported by a declaration from the plaintiff's attorney that, inter alia:

    i.    Sets forth the attorney's estimate of the number of individuals in the class.

    ii.    (A) Sets forth the attorney's estimate of the total amount of damages, monetary penalties or other relief that the class would be awarded on each claim if that claim were entirely successful at trial; (B) explains how that estimate was calculated; and (C) states the collective total for all of the claims.

    iii.    Sets forth: (A) the attorney's estimate as to each claim of the total amount of damages, monetary penalties or other relief that the class could reasonably expect to be awarded at trial, taking into account difficulties of proof, the defendant's defenses, and other attendant risks; (B) the attorney's reasons for those estimates; (C) and the likely award at trial for all claims collectively.

    iv.    Sets forth the attorney's estimate of the recovery by the average class member if the settlement were approved. If the recovery by different class members will vary, the attorney shall also estimate the range (high and low) of possible recoveries.

    v.    Describes in detail the nature and extent of the formal and informal discovery exchanged and other factual investigation conducted to determine the size of the class and the strength of the class claims.

    vi.    States (A) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this action and (B) whether the attorney made reasonable inquiry of other members of the attorney's law firm and any associated law firm to determine whether those individuals are aware of any such similar actions. If any such similar actions are known to exist, the declaration shall also state (C) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

b.    The motion shall be supported by a declaration from the defendant's attorney that states (i) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this

action and (ii) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

c.    The motion shall describe how the value of any uncashed checks, unpaid cash residue, or other unclaimed or abandoned funds will be distributed.

    i.    The Court believes that redistribution of the value of uncashed settlement check to those class members who have cashed their checks will better serve the public interest and the interest of the class than distribution in the manner otherwise prescribed by *California Code of Civil Procedure* section 384(b). If one or more of the parties disagree, then the motion shall be supported by a declaration from a party or the party's counsel explaining the factual basis for the disagreement.

    ii.    If the parties propose to pay any unclaimed funds to a charitable organization, the motion shall be supported by a declaration from a knowledgeable person from the proposed recipient. The declaration shall:

        A.    Establish that the recipient is a nonprofit organization, foundation, or program of the type described in that subdivision.

        B.    Describe the history of the recipient, the types of projects that it has conducted or supported over the last five years, and any particular use to which it would intend to devote the unpaid residue if received.

        C.    Describe the geographic area in which the recipient operates in general, and the nature and extent of the services it provides in Riverside County in particular.

    iii.    The declarations of the attorneys for the plaintiff and for the defendant shall describe both (A) any relationship between the proposed recipient and (1) any class representative or other party, (2) any officer, director, or manager of any party, or (3) any attorney or law firm for any party, and (B) the inquiries the attorney made to determine whether there is any such relationship.

d.    If the settlement contemplates the use of an administrator to implement the terms of the settlement, the motion shall be supported by:

    i.    A declaration from the plaintiff's attorney, stating whether bids were sought from multiple potential administrators and, if so, the results of that competitive bidding. If the parties did not select the lowest bidder, the declaration shall explain that decision.

    ii.    A declaration from the administrator describing:

        A.    The administrator's experience;

B.  The fee to be charged by the administrator to perform the services described in the settlement agreement and proposed order;

C.  Whether that fee is (1) fixed, (2) hourly, or (3) hourly with a cap; and

D.  How the fee was calculated.

e.  Any release to be given by the participating class members (other than the class representatives) shall be limited to:

i.  The defendants named in the complaint, together with their officers, directors, employees and agents. If any other parties are sought to be released, the motion shall both (A) identify those other parties by name and (B) explain the facts that justify their inclusion.

ii.  The claims stated in the complaint and those based solely upon the facts alleged in the complaint.

iii.  Liability that arose during the class period as defined by the settlement agreement.

f.  If notice is not to be given by first class mail to addresses believed to be current, the motion shall discuss the proposed method of giving notice, the alternative methods considered, and the reasons that the proposed method is the one most likely to give actual notice to the greatest number of class members.

g.  If the settlement requires any of the class members to submit claims, the motion shall explain why a claim process is reasonably necessary. If the defendant knows (A) the identity of the class members, (B) their addresses or former addresses, and (C) the facts necessary to calculate the recovery of each class member, the Court will require a strong showing of necessity for a claims process.

h.  If the settlement provides that any portion of the consideration paid or deposited by the defendant may revert to the defendant, the motion shall explain (i) the circumstances under which that reversion would occur, (ii) the maximum amount of any reversion, and (iii) why that reversion is fair.

i.  The motion shall describe how individual settlement payments will be allocated for tax purposes.

k.  The documents that will be read by or used by the class members – the proposed notice, objection form, exclusion form, and any claim form – shall be drafted in a manner that is likely to be readily understood by the members of the class.

i.  In particular, they shall not contain any Latin terms (such as et al. and et seq.), any legal terms of art, or any unfamiliar symbols or abbreviations (such as §, LLC, and IWO).

ii.  To assist the Court in determining whether those documents comply with that directive, the motion shall be supported by a declaration of the defendant

on personal knowledge concerning the likely age, education, and experience of the class members, and of their ability to read and comprehend English.

4.    The Proposed Order

a.    The motion shall be accompanied by a separate proposed order which shall include, as attachments to the order, the proposed notice (*Cal. Rules of Court*, rule 3.769(e)), proposed exclusion form, proposed objection form, any proposed claim form, and any other form that is proposed to accompany the notice. The Court is likely to modify those proposed forms. Therefore, the Court will not issue an order that merely incorporates by reference the forms attached to the settlement agreement.

b.    The settlement agreement shall not be attached to the order.

c.    Counsel shall carefully review both the terms and the terminology of the order and accompanying forms (notice, objection form, exclusion form, and any claim form) to confirm that the various documents are internally consistent, consistent with each other, and consistent with the settlement agreement.

d.    The order shall state the name of any settlement administrator, and shall describe the nature of the services that the administrator will be required to perform, either directly or by reference to the settlement agreement.

e.    The order shall provide that the notice shall be accompanied by an exclusion form that the class members may use. The order shall provide that any exclusion form shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the exclusion form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every exclusion form received by the administrator.

f.    The proposed order shall provide that the notice shall be accompanied by an objection form that the class members may use. The order shall provide that any objection shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the objection form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every objection form received by the administrator.

g.    Neither the order, the notice, nor the objection form shall require an objecting party to do either of the following, either personally or through counsel:

i.    To appear at the hearing on the motion for final approval for that party's objection to be considered.

ii.    To file or serve, or to state in the objection, a notice of intention to appear at the hearing on the motion for final approval.

h. The order shall provide a proposed date for the Final Approval Hearing. The order shall require that either counsel or the administrator must give notice to any objecting party of any continuance of the hearing of the motion for final approval.

i. Neither the order nor the notice shall purport to enjoin the class members from filing any actions or administrative claims or proceedings pending the final hearing on the settlement, or for any other period.

j. If notice is to be given by mail, and if the class members will be required to submit a claim form, the order shall provide:

   i. That the notice be accompanied by a stamped envelope addressed to the claims administrator; and

   ii. That the claims administrator be required to send a reminder notice to every class member from whom no claim or exclusion request is received within 30 days of mailing the notice.

5. The Proposed Notice

a. The notice shall include an estimate of the likely recovery by the individual class member to whom the notice is sent, if known. If it is not known, the notice shall include an estimate of the likely recovery by the average class member. If the recovery by different members will vary, the notice shall also include an estimate of the range of possible recoveries.

b. To avoid discouraging any dissenting class members from objecting to the proposed settlement, the notice shall clearly indicate that the Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the final hearing.

c. The notice shall advise the class members of where they can find the settlement agreement, by describing (i) the full title and filing date either of the settlement agreement or of the declaration or other document to which the agreement was attached when filed with the Court, (ii) the address of the courthouse to which the case is assigned, and (iii) the address of the court's website at which the case file can be viewed on-line.

d. Neither the notice nor the documents enclosed with it shall describe any settlement administrator as the "claims administrator" unless the class members are required to submit claims.

e. The notice shall include a description of any release being given by the class members.

6. The Proposed Claim Form

The information required to be provided by the class member on any claim form shall not exceed the minimum information necessary to (a) identify the claimant, (b) process the claim, and (c) contact the claimant to clarify any uncertainties.

7.    The Proposed Objection Form

   a.    The objection form shall (i) instruct the objecting class member that the objection must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the objection must be mailed or otherwise delivered.

   b.    The information required to be provided by an objecting class member on the objection form shall not exceed the minimum information necessary to (i) identify the objector as a person entitled to object to the settlement, (ii) describe the nature of and basis for the objection, and (iii) contact the objector to clarify any uncertainties.

   c.    If a claim must be submitted to participate in the settlement, the objection form shall remind the objector that, to participate in the settlement in the event that the objection is overruled, the objector must also submit a claim.

8.    The Proposed Exclusion Form

   a.    The exclusion form shall (i) instruct the class member seeking exclusion that the exclusion form must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the exclusion form must be mailed or otherwise delivered.

   b.    The information required to be provided by a class member on the exclusion form shall not exceed the minimum information necessary to (i) identify the person as a class member and (ii) contact the person to clarify any uncertainties.

9.    Revised Documents

If the Court either denies the motion or continues the hearing on the motion, and if the plaintiff thereafter files any amended settlement agreement, order, notice or form in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

H.    MOTIONS FOR FINAL APPROVAL OF A SETTLEMENT

If a motion for preliminary approval is granted, the plaintiff must thereafter move for final approval of the settlement.

1.    The order granting preliminary approval will set the date for the hearing on the plaintiff's motion for final approval. Promptly after the entry of that order, the plaintiff shall reserve a law and motion hearing on the date set in the order.

2. Any request for a "service," "enhancement," or "incentive" payment to a named class representative shall be supported by a declaration from the proposed recipient in which the declarant:

    a. Describes the services performed by the declarant to further the prosecution of the action;

    b. Estimates the time incurred by the declarant in performing those services;

    c. Describes any risks assumed or benefits received by the declarant in prosecuting the action;

    d. Describes any adverse consequences actually suffered by the declarant as a result of prosecuting the action; and

    e. States the amount that the declarant expects to receive as a class member.

3. Any request of attorney's fees shall be supported by a declaration of plaintiff's counsel that provides evidence of the total amount of time spent by counsel, a description of the work performed, the reasonableness of the fees charged and a detailed description of the costs actually incurred. Additionally, if relevant, the request for fees shall also advise the Court whether there is an agreement about how attorney fees will be paid, including fee splitting, and whether the client(s) has been given written notice.

4. Any request for compensation for expenses incurred by the plaintiff's attorneys shall be supported by a detailed declaration or other evidence describing the date, nature, and amount of each expense incurred.

5. The motion shall be accompanied by a declaration from the settlement administrator. That declaration shall:

    a. Describe both (i) the administrator's distribution of the notice, objection form, exclusion form, and any claim form, and (ii) the results thereof. If claims are required, the declaration shall describe the number of claims received and the total value of the claims. The declaration shall clearly distinguish between valid forms and any forms that are untimely, incomplete, or otherwise invalid.

    b. Attach and authenticate (i) a copy of the final version of the notice and of all forms enclosed with it, including the objection form, the exclusion form, and any claim form, (ii) a copy of every objection form received, and (iii) a copy of every exclusion form received. If the reasons stated on any objection form are in a language other than English, the administrator shall include a translation into English.

    c. Describe (i) the services performed by the administrator to the date of the declaration, (ii) the time and expenses incurred to perform those services, and (iii) either the fee charged for those the services or the agreed-upon flat fee.

d.   Describe (i) the services to be performed by the administrator after the date of the declaration, (ii) the estimated time and expenses needed to perform those services, and (iii) either the estimated fee for those the services or the agreed-upon flat fee.

6.   The motion shall be accompanied by a proposed judgment or, if counsel prefer, a proposed combined order and judgment.

7.   The judgment shall require that:

a.   Any envelope transmitting a settlement distribution to a class member shall bear the notation, "YOUR CLASS ACTION SETTLEMENT CHECK IS ENCLOSED."

b.   Any settlement distribution check shall be negotiable for at least 90 days but not more than 180 days from the date of mailing.

c.   The administrator shall mail a reminder postcard to any class member whose settlement distribution check has not been negotiated within 60 days after the date of mailing.

d.   If (i) any of the class members are current employees of the defendant, (ii) the distribution mailed to those employees is returned to the administrator as being undeliverable, and (iii) the administrator is unable to locate a valid mailing address, the administrator shall arrange with the defendant to have those distributions delivered to the employees at their place of employment.

8.   The first reference in the judgment to the settlement agreement shall include a statement of (a) the title of the settlement agreement, (b) the date the agreement was filed, and (c) the name of the document to which the agreement was attached, if any.

9.   The judgment shall state the names of any class members who excluded themselves from the settlement, if any.

10.  If multiple law firms represent the plaintiff, the judgment shall separately state the fees and expenses to be paid to each firm.

11.  If the settlement agreement provides for the distribution of any funds to a *cy pres* recipient, the judgment shall state the recipient's name and address, and shall describe the circumstances under which funds would be paid to that recipient.

12.  The judgment shall not:

a.   Expose the class members to a potential contempt charge by barring or otherwise enjoining the class members from prosecuting the released claims.

b.   Include a provision that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

c.   Provide for the dismissal of the action.  (Cal. Rules of Court, rule 3.769(h).)

13.  The judgment may restrict the plaintiff and the defendant from offering the settlement agreement into evidence in actions between each other, but shall not purport to prevent

other parties from doing so or to otherwise predetermine its admissibility in litigation involving third parties.

14. The judgment shall describe both the text of the notice of entry of judgment to be given to the class members *California Rules of Court*, rule 3.771(b), the party or person required to give that notice, and the manner in which that notice is to be given.

15. If the Court either denies the motion for final approval or continues the hearing on the motion, and if the plaintiff thereafter files any amended proposed order or judgment, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

16. The order granting the motion for final approval shall provide a date for the Final Report (Nonappearance) Hearing and a deadline for the filing of a report concerning the amount of money distributed.

I.    FINAL REPORT (NONAPPEARANCE) HEARING

Any report pursuant to *California Code of Civil Procedure* section 384(b), shall be filed within 5 court days of the nonappearance hearing and shall be in the form of a declaration from the administrator or other declarant with personal knowledge of the facts, and, if there is unpaid residue to be distributed, shall be accompanied by a proposed amended judgment. The report shall be in the form of a declaration from the settlement administrator or other declarant with personal knowledge of the facts, and to describe (i) the date the checks were mailed, (ii) the total number of checks mailed to class members, (iii) the average amount of those checks, (iv) the number of checks that remain uncashed, (v) the total value of those uncashed checks, (vi) the average amount of the uncashed checks, and (vii) the nature and date of the disposition of those unclaimed funds.

If applicable, the proposed amended judgment shall require counsel for Plaintiff to send a copy of any amended judgment which distributes funds to a cy pres recipient to the Judicial Council in compliance with *California Code of Civil Procedure* section 384.5. Further the correspondence by counsel shall include a cover letter providing the Judicial Council with the information required pursuant to *California Government Code* section 68520. Proof of Service shall be filed with the court within 15 days of the filing of the judgment.

J.    MOTIONS REGARDING CLASS CERTIFICATION

1.    No motion for class certification or to deny class certification shall be filed without leave of court. Before leave to file such a motion is requested, the Court expects the parties to have exhausted efforts to mediate a resolution of the case.

2.   At the time that the Court grants leave of court to file either a motion for class certification or a motion denying class certification, the Court will also establish a briefing schedule and will set a status conference on a date after the reply brief is due. At the status conference, the Court will determine the date on which the motion will be heard. The hearing date may be far enough in the future to allow for further mediation.

3.   If multiple classes or subclasses are alleged, the motion shall address the issues of definition, ascertainability and numerosity separately as to each class or subclass.

4.   If multiple class representatives are proposed, the motion shall address the issues of typicality and adequacy of representation separately as to each representative.

5.   If multiple class claims are alleged, the motion shall address the issue of whether common questions of law and fact predominate separately as to each such claim.

6.   A motion for class certification shall include:

   a.   A trial plan that explains how the plaintiff will establish a prima facie case at trial. If the plaintiff intends to rely upon statistical evidence to prove any portion of any class claim, the plan shall describe that evidence and how it will be used to promote manageability. If the defendant has raised any affirmative defenses that rely upon individual evidence, the plan that explains how those defenses can be litigated.

   b.   A declaration of proposed class counsel, describing his or her experience in representing a class at trial.

Harold W. Hopp
Judge of the Superior Court

Page 15 of 15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
Court Ruling re: Class Action Case Management Order #1

05/12/2026
11:30 AM
Department 1

**CVRI2602762**
**GREER vs PANDA RESTAURANT GROUP, INC.**

Honorable Harold W. Hopp, Judge
D. Board Jr, Courtroom Assistant
Court Reporter: None

**APPEARANCES:**

No Appearances

Court deems case complex pursuant to Section CRC 3.400.
Minute entry completed.

Page 1 of 1 Pages

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2602762

**Case Name:**    GREER vs PANDA RESTAURANT GROUP, INC.

### NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Assigned Judge in Department 1  for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing.  If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

Dated: 05/12/2026

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by: _____
M. Banuelos, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)

Electronically FILED by Superior Court of California, County of Riverside on 05/28/2026 11:37 AM
Case Number CVRI2602762 0000168998411 - Jason B. Galkin, Executive Officer/Clerk of the Court By Maria Banuelos, Clerk

John R. Habashy, Esq. (SBN 236708)
*john@lexiconlaw.com*
**Lexicon Law, P.C.**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Tel: 213-223-9500

Andree Rozados-Quaresima, Esq. (SBN 342845)
*andree@scottdowens.com*
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

*Attorneys for Plaintiff and the Proposed Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF RIVERSIDE**

| | |
|---|---|
| DAWNISHA GREER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br>vs.<br><br>PANDA RESTAURANT GROUP, INC., a California corporation,<br><br>Defendant. | **CASE NO.: CVRI2602762**<br><br>Assigned for All Purposes to:<br>Hon. Harold W. Hopp, Dept. 1<br><br>**NOTICE OF ENTRY OF CLASS ACTION CASE MANAGEMENT ORDER #1**<br><br>Complaint Filed:  May 6, 2026<br>Trial Date:        Not Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 12, 2026, the Honorable Harold W. Hopp, Judge

of the Superior Court of the State of California, County of Riverside, Department 1, entered the

attached Class Action Case Management Order #1 in the above-captioned action.

A true and correct copy of the Class Action Case Management Order #1, file-stamped

May 12, 2026, is attached hereto as Exhibit A and incorporated herein by this reference.

All parties are directed to review the Order in its entirety and to comply with its terms, which govern, among other things: (1) the designation of this matter as a complex case; (2) the case progression plan and joint statement requirements; (3) alternative dispute resolution; (4) the scope and stay of discovery; (5) requirements for any request to dismiss class claims; (6) the procedures for motions for preliminary and final approval of any class settlement; and (7) motions concerning class certification.

Dated: May 28, 2026

LEXICON LAW, PC

By: /s/ John R. Habashy
John R. Habashy, Esq. (SBN 236708)
*john@lexiconlaw.com*
**Lexicon Law, P.C.**
633 W. 5th St., 28th Floor
Los Angeles, CA 90071
Tel: 213-223-9500

Andree Rozados-Quaresima, Esq. (SBN 342845)
*andree@scottdowens.com*
**Scott D. Owens, P.A.**
2750 N. 29th Ave., Suite 209A
Hollywood, Florida 33020
Telephone: (954) 589-0588

Attorneys for Plaintiff
DAWNISHA GREER, individually
and on behalf of all others
similarly situated

# Exhibit A

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

| CASE TITLE: Greer v. Panda Restaurant Group, Inc.<br>CASE NO.:    CVRI2602762<br>DATE:        May 12, 2026 | Department 1 | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>**MAY 12 2026** |
|---|---|---|
| PROCEEDING: Class Action Case Management Order #1 | | , —    **D. Board**    D8 |

Unless otherwise ordered, this Case Management Order ("CMO") shall govern the management of this case.

## A.    IN GENERAL

1.    The Court finds that this is a complex case. *Cal. Rules of Court*, rules 3.400(c)(6), 3.403(b). The clerk shall impose fees accordingly. The court will entertain objections to this designation at the next Case Management Conference or status conference.

2.    This case has been assigned to Department 1, Judge Harold W. Hopp, for all purposes, including case management, law and motion, and trial.

3.    The plaintiff shall serve a copy of this CMO on any defendant who has not yet appeared, and shall file proof of service promptly thereafter.

## B.    CASE MANAGEMENT AND THE CASE PROGRESSION PLAN

1.    The Court finds that this case involves exceptional circumstances that are likely to prevent this case from meeting the goals and deadlines set by *California Rules of Court*, rule 3.713(b). Accordingly, this case is exempt from those case disposition time goals. *Id.*, rule 3.714(c)(1). With the input from the parties, the Court shall develop a case progression plan with the goal of disposing of the case within three years. *Id.*, rule 3.714(c)(2).

2.    Prior to the next Status Hearing or Case Management Conference, counsel for the parties shall meet and confer regarding the joint statement required by RSC Local Rule 3160.

3.    Not later than five court days in advance of the next Status Hearing or Case Management Conference, all parties that have appeared shall file the joint statement required by rule 3160 instead of Judicial Council form CM-110 [case management statement]. In addition to the items listed in Rule 3160, the statement shall:

   a.    Advise the Court whether any of the parties or their counsel are aware of any other class action, putative class action, or other type of representative or collective action in this or any other jurisdiction that asserts claims similar to those here on behalf of

      a class, putative class, or other group of individuals that in any way overlaps with the putative class alleged here.

b. Describe the parties' case progression plan, which shall include at least (i) a statement as to whether the parties agree to pursue mediation and (ii) a plan of the informal discovery and any formal discovery to be conducted in preparation for mediation, class certification, or both.

4. At least five court days before any subsequent Case Management Conference, Status Hearing, or Trial Setting Conference, the parties shall file a joint statement that:

a. Describes the status of the case, including (i) the results of any mediation or other settlement efforts, (ii) the degree to which the case progression plan has been implemented and (iii) any changes or additions to the case progression plan; and

b. Identifies any issues or concerns that either party wishes to discuss with the Court.

5. If mediation is unsuccessful, the case progression plan shall be expanded prior to the next status conference to include (a) a pre-certification discovery schedule, (b) a deadline for filing a motion for class certification, and a proposed briefing schedule for that motion.

6. The Court will rely on the parties' joint statements in conducting Case Management Conferences and Status Conferences and, where appropriate, will make orders without holding a formal hearing.

## C. ALTERNATIVE DISPUTE RESOLUTION

The court expects the parties to engage in private mediation at the earliest practicable time, i.e., as soon as all parties have obtained – preferably through informal means – sufficient information from the opposing party(s) to enable them to engage in meaningful mediation. If the parties believe that another form of alternative dispute resolution is appropriate for this action, they should explain this in their joint reports as soon as practicable.

## D. DISCOVERY

1. Counsel are encouraged to engage in informal discovery rather than relying on formal discovery. The Court does not stay or otherwise limit informal discovery.

2. The discovery stay under RSC Local Rule 3160(B) is vacated as to interrogatories concerning the identity of and contact information for members of the putative class. Any such interrogatories propounded by the plaintiff to the defendant shall be accompanied by (a) a proposed *Belaire West* notice, (b) the name of a proposed third-party administrator, and (c) a proposal regarding the allocation of the cost of the notice.

3. All other formal discovery concerning class-certification issues is stayed pending further order of the court. Requests for leave to propound formal discovery concerning class-certification issues may be made either by submitting a declaration and proposed order or

by making an oral request at status conferences or at informal conferences with the Court in accordance with paragraph 5 below.  The Court will grant such a request if the applicant demonstrates:

    a.    That the parties have met and conferred to discuss both (i) the scope and sources of the information needed either to permit a meaningful mediation or to support or oppose a class-certification motion and (ii) whether the parties would agree to exchange that information informally;

    b.    That the parties were unable to reach an agreement; and

    c.    The discovery is reasonably necessary either (i) to permit a meaningful mediation or (ii) to make or oppose a certification motion.

4.    All formal discovery concerning solely the merits of the plaintiff's claims (as opposed to whether a class should be certified to prosecute those claims) is stayed until a motion regarding class certification has been granted.

5.    No discovery motions may be filed without leave of court.  If a discovery dispute arises:

    a.    The parties shall meet and confer either in person or by telephone in a good-faith effort to resolve the dispute.  If, despite that effort, the parties are unable to resolve the dispute, then counsel shall contact the clerk of this department to schedule an informal conference at which the court will discuss the dispute with counsel and, if not resolved to the parties' satisfaction, will consider any request for leave to file a formal motion.

    b.    The conference may be conducted by telephone or in person, as counsel prefer. Prior to the conference, the party seeking relief shall provide the clerk of this department with a brief (two-to-three sentence) description in writing of the reason for the conference.  If the conference is to be by telephone, counsel shall also provide the clerk with the call-in telephone number and passcode.

    c.    If the opposing side will not agree to participate in the informal conference, then the moving party shall bring an ex parte application for leave to file a discovery motion.

E.    <u>REQUESTS FOR DISMISSAL OF CLASS CLAIMS</u>

If the plaintiff seeks to dismiss or otherwise abandon either the entire action, any cause of action asserted on behalf of the putative class, or any defendant against whom any cause of action is asserted on behalf of the class, Court approval must be sought as follows:

1.    The plaintiff shall not use the preprinted Request for Dismissal, Judicial Council form CIV-110.  Instead, the request shall be made by the submission to the court of an Application for Dismissal that includes: (a) a declaration from plaintiff's counsel; (b) a declaration from each named plaintiff; and (c) a proposed order of dismissal.

Page 3 of 15

2.   The declarations shall state whether the plaintiff has attempted to settle the plaintiff's individual claims, and if so, the status of those negotiations.

3.   The declarations must comply with *California Rules of Court*, rule 3.770(a), pertaining to any consideration being paid for the dismissal. Because the purpose of that rule is to avoid collusion between the parties to the detriment of the potential class members, the showing must be made by declaration rather than by stipulation.

4.   If the dismissal is in exchange for any consideration other than a waiver of costs, the declaration of plaintiff's counsel shall authenticate a fully executed copy of any settlement agreement. In addition, the declaration shall address each of the following:

   a.   What is the form and value of the consideration, how was it calculated, and to whom is it to be paid?

   b.   Is the plaintiff required to execute a release in addition to a dismissal? If so, what is the scope of that release?

   c.   How is the retention of that consideration either by the plaintiff or the plaintiff's attorney consistent with their respective fiduciary duties to the class? In particular, if the plaintiff has negotiated a settlement of any individual claim against any defendant separate from the representative claims, and that settlement provides for the payment to any plaintiff of consideration other than a waiver of costs, the declaration shall as to each such individual claim:

      i.   Estimate both (A) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff would be awarded if the action were entirely successful at trial on that claim, and (B) the total amount of damages, monetary penalties, attorney's fees and costs, interest, or other relief that the plaintiff could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and other attendant risks;

      ii.  Briefly describe the basis for those estimates; and

      iii. Describe the form and value of the consideration to be paid in satisfaction of that claim.

5.   The declarations by plaintiff and plaintiff's counsel shall state (a) whether the declarant has ever informed any of the putative class members – whether formally or informally, orally or in writing, individually or as a group – of the preparation, filing, or pendency of the action, and (b) if so, both (i) the nature and extent of that information and (ii) whether the declarant knows or has a means of discovering the name and mailing address of the putative class member or members to whom that information was communicated.

6.   If the dismissal is in exchange for no consideration other than a waiver of costs, the request shall explain the reason for the dismissal. If the reason is that the named plaintiff no longer wishes to prosecute the case on behalf of the putative class:

a.  The plaintiff shall explain the reason for his or her change of heart. Simply stating that the plaintiff no longer wishes to represent the class is not sufficient.

b.  The plaintiff's counsel shall explain why counsel wishes to abandon the class claims rather than locate a new class representative.

7.  Any request shall explain why the putative class members will not be prejudiced by the requested dismissal.

### F.   MOTIONS & APPLICATIONS GENERALLY

1.  A party making an ex parte application must, inter alia, "[a]ttempt to determine whether the opposing party will appear to oppose the application." *Cal. Rules of Court*, rule 3.1204(a)(2). That attempt shall be made by telephone. Written notice asking the opposing party to inform the moving party of the opposing party's intentions is not sufficient.

2.  A party desiring an order shortening time for notice of a motion shall not bring an ex parte application for such an order until that party has first (a) reserved the earliest available hearing date for the motion and (b) filed the motion. The Court will not deem the ex parte application as constituting the motion to be heard.

### G.   MOTIONS FOR PRELIMINARY APPROVAL OF SETTLEMENT

If the matter is settled, a motion for preliminary approval of the settlement must be filed. All applications for such approval shall be made by noticed motion, and shall be supported by declaration. In order to aid the Court's review, all declarations filed in support of a motion for preliminary approval shall include appropriate headings that identify the specific paragraph of Section G which is being addressed. For example, counsel's estimate of the number of individuals in the class should be preceded by a heading that identifies G(3)(a)(1), and counsel's estimate of the recovery by the average class member if the settlement were approved should be preceded by heading that identifies G(3)(a)(iv).

1.  Settlement Agreements in General

a.  The settlement agreement shall not provide that any order, notice, form, or judgment shall include any provision that this order prohibits from being included in such a document. (See §§ G.3 through G.9, *infra*.)

b.  The settlement agreement shall be written, signed by all necessary parties, and filed, either in the form of a separate stipulation or as an authenticated attachment to a declaration of counsel.

2.  Notices of Settlement

Page 5 of 15

Regardless of the terms of the proposed settlement, counsel shall not file a Notice of Settlement of Entire Case (Judicial Council form CM-200).

3.    The Motion in General

    a.    The motion shall be supported by a declaration from the plaintiff's attorney that, inter alia:

        i.    Sets forth the attorney's estimate of the number of individuals in the class.

        ii.    (A) Sets forth the attorney's estimate of the total amount of damages, monetary penalties or other relief that the class would be awarded on each claim if that claim were entirely successful at trial; (B) explains how that estimate was calculated; and (C) states the collective total for all of the claims.

        iii.    Sets forth: (A) the attorney's estimate as to each claim of the total amount of damages, monetary penalties or other relief that the class could reasonably expect to be awarded at trial, taking into account difficulties of proof, the defendant's defenses, and other attendant risks; (B) the attorney's reasons for those estimates; (C) and the likely award at trial for all claims collectively.

        iv.    Sets forth the attorney's estimate of the recovery by the average class member if the settlement were approved.  If the recovery by different class members will vary, the attorney shall also estimate the range (high and low) of possible recoveries.

        v.    Describes in detail the nature and extent of the formal and informal discovery exchanged and other factual investigation conducted to determine the size of the class and the strength of the class claims.

        vi.    States (A) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this action and (B) whether the attorney made reasonable inquiry of other members of the attorney's law firm and any associated law firm to determine whether those individuals are aware of any such similar actions.  If any such similar actions are known to exist, the declaration shall also state (C) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

    b.    The motion shall be supported by a declaration from the defendant's attorney that states (i) whether the attorney is aware of any class, representative or other collective action in any other court in this or any other jurisdiction that asserts claims similar to those asserted in this action on behalf of a class or group of individuals some or all of whom would also be members of the class defined in this

action and (ii) the name and case number of any such case, the nature of the claims asserted, the definition of the class or other parties on whose behalf the action is brought, and the procedural status of that case.

c. The motion shall describe how the value of any uncashed checks, unpaid cash residue, or other unclaimed or abandoned funds will be distributed.

    i. The Court believes that redistribution of the value of uncashed settlement check to those class members who have cashed their checks will better serve the public interest and the interest of the class than distribution in the manner otherwise prescribed by *California Code of Civil Procedure* section 384(b). If one or more of the parties disagree, then the motion shall be supported by a declaration from a party or the party's counsel explaining the factual basis for the disagreement.

    ii. If the parties propose to pay any unclaimed funds to a charitable organization, the motion shall be supported by a declaration from a knowledgeable person from the proposed recipient. The declaration shall:

        A. Establish that the recipient is a nonprofit organization, foundation, or program of the type described in that subdivision.

        B. Describe the history of the recipient, the types of projects that it has conducted or supported over the last five years, and any particular use to which it would intend to devote the unpaid residue if received.

        C. Describe the geographic area in which the recipient operates in general, and the nature and extent of the services it provides in Riverside County in particular.

    iii. The declarations of the attorneys for the plaintiff and for the defendant shall describe both (A) any relationship between the proposed recipient and (1) any class representative or other party, (2) any officer, director, or manager of any party, or (3) any attorney or law firm for any party, and (B) the inquiries the attorney made to determine whether there is any such relationship.

d. If the settlement contemplates the use of an administrator to implement the terms of the settlement, the motion shall be supported by:

    i. A declaration from the plaintiff's attorney, stating whether bids were sought from multiple potential administrators and, if so, the results of that competitive bidding. If the parties did not select the lowest bidder, the declaration shall explain that decision.

    ii. A declaration from the administrator describing:

        A. The administrator's experience;

B.      The fee to be charged by the administrator to perform the services described in the settlement agreement and proposed order;

C.      Whether that fee is (1) fixed, (2) hourly, or (3) hourly with a cap; and

D.      How the fee was calculated.

e.      Any release to be given by the participating class members (other than the class representatives) shall be limited to:

   i.     The defendants named in the complaint, together with their officers, directors, employees and agents.  If any other parties are sought to be released, the motion shall both (A) identify those other parties by name and (B) explain the facts that justify their inclusion.

   ii.    The claims stated in the complaint and those based solely upon the facts alleged in the complaint.

   iii.   Liability that arose during the class period as defined by the settlement agreement.

f.      If notice is not to be given by first class mail to addresses believed to be current, the motion shall discuss the proposed method of giving notice, the alternative methods considered, and the reasons that the proposed method is the one most likely to give actual notice to the greatest number of class members.

g.      If the settlement requires any of the class members to submit claims, the motion shall explain why a claim process is reasonably necessary.  If the defendant knows (A) the identity of the class members, (B) their addresses or former addresses, and (C) the facts necessary to calculate the recovery of each class member, the Court will require a strong showing of necessity for a claims process.

h.      If the settlement provides that any portion of the consideration paid or deposited by the defendant may revert to the defendant, the motion shall explain (i) the circumstances under which that reversion would occur, (ii) the maximum amount of any reversion, and (iii) why that reversion is fair.

i.      The motion shall describe how individual settlement payments will be allocated for tax purposes.

k.      The documents that will be read by or used by the class members – the proposed notice, objection form, exclusion form, and any claim form – shall be drafted in a manner that is likely to be readily understood by the members of the class.

   i.     In particular, they shall not contain any Latin terms (such as et al. and et seq.), any legal terms of art, or any unfamiliar symbols or abbreviations (such as §, LLC, and IWO).

   ii.    To assist the Court in determining whether those documents comply with that directive, the motion shall be supported by a declaration of the defendant

on personal knowledge concerning the likely age, education, and experience of the class members, and of their ability to read and comprehend English.

4.    The Proposed Order

a.    The motion shall be accompanied by a separate proposed order which shall include, as attachments to the order, the proposed notice (*Cal. Rules of Court*, rule 3.769(e)), proposed exclusion form, proposed objection form, any proposed claim form, and any other form that is proposed to accompany the notice. The Court is likely to modify those proposed forms. Therefore, the Court will not issue an order that merely incorporates by reference the forms attached to the settlement agreement.

b.    The settlement agreement shall not be attached to the order.

c.    Counsel shall carefully review both the terms and the terminology of the order and accompanying forms (notice, objection form, exclusion form, and any claim form) to confirm that the various documents are internally consistent, consistent with each other, and consistent with the settlement agreement.

d.    The order shall state the name of any settlement administrator, and shall describe the nature of the services that the administrator will be required to perform, either directly or by reference to the settlement agreement.

e.    The order shall provide that the notice shall be accompanied by an exclusion form that the class members may use. The order shall provide that any exclusion form shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the exclusion form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every exclusion form received by the administrator.

f.    The proposed order shall provide that the notice shall be accompanied by an objection form that the class members may use. The order shall provide that any objection shall be submitted to the settlement administrator rather than filed with the court. The order shall not require the class member to send copies of the objection form to counsel, but may require the settlement administrator to do so. The order shall provide that the settlement administrator shall file a declaration concurrently with the filing of any motion for final approval, authenticating a copy of every objection form received by the administrator.

g.    Neither the order, the notice, nor the objection form shall require an objecting party to do either of the following, either personally or through counsel:

i.    To appear at the hearing on the motion for final approval for that party's objection to be considered.

ii.    To file or serve, or to state in the objection, a notice of intention to appear at the hearing on the motion for final approval.

h.      The order shall provide a proposed date for the Final Approval Hearing.  The order shall require that either counsel or the administrator must give notice to any objecting party of any continuance of the hearing of the motion for final approval.

i.      Neither the order nor the notice shall purport to enjoin the class members from filing any actions or administrative claims or proceedings pending the final hearing on the settlement, or for any other period.

j.      If notice is to be given by mail, and if the class members will be required to submit a claim form, the order shall provide:

i.      That the notice be accompanied by a stamped envelope addressed to the claims administrator; and

ii.     That the claims administrator be required to send a reminder notice to every class member from whom no claim or exclusion request is received within 30 days of mailing the notice.

5.  The Proposed Notice

a.      The notice shall include an estimate of the likely recovery by the individual class member to whom the notice is sent, if known.  If it is not known, the notice shall include an estimate of the likely recovery by the average class member.  If the recovery by different members will vary, the notice shall also include an estimate of the range of possible recoveries.

b.      To avoid discouraging any dissenting class members from objecting to the proposed settlement, the notice shall clearly indicate that the Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the final hearing.

c.      The notice shall advise the class members of where they can find the settlement agreement, by describing (i) the full title and filing date either of the settlement agreement or of the declaration or other document to which the agreement was attached when filed with the Court, (ii) the address of the courthouse to which the case is assigned, and (iii) the address of the court's website at which the case file can be viewed on-line.

d.      Neither the notice nor the documents enclosed with it shall describe any settlement administrator as the "claims administrator" unless the class members are required to submit claims.

e.      The notice shall include a description of any release being given by the class members.

6.  The Proposed Claim Form

The information required to be provided by the class member on any claim form shall not exceed the minimum information necessary to (a) identify the claimant, (b) process the claim, and (c) contact the claimant to clarify any uncertainties.

7.    The Proposed Objection Form

a.    The objection form shall (i) instruct the objecting class member that the objection must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the objection must be mailed or otherwise delivered.

b.    The information required to be provided by an objecting class member on the objection form shall not exceed the minimum information necessary to (i) identify the objector as a person entitled to object to the settlement, (ii) describe the nature of and basis for the objection, and (iii) contact the objector to clarify any uncertainties.

c.    If a claim must be submitted to participate in the settlement, the objection form shall remind the objector that, to participate in the settlement in the event that the objection is overruled, the objector must also submit a claim.

8.    The Proposed Exclusion Form

a.    The exclusion form shall (i) instruct the class member seeking exclusion that the exclusion form must be mailed or delivered to the settlement administrator, (ii) state the name and address of the settlement administrator, and (iii) state the date by which the exclusion form must be mailed or otherwise delivered.

b.    The information required to be provided by a class member on the exclusion form shall not exceed the minimum information necessary to (i) identify the person as a class member and (ii) contact the person to clarify any uncertainties.

9.    Revised Documents

If the Court either denies the motion or continues the hearing on the motion, and if the plaintiff thereafter files any amended settlement agreement, order, notice or form in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

H.    MOTIONS FOR FINAL APPROVAL OF A SETTLEMENT

If a motion for preliminary approval is granted, the plaintiff must thereafter move for final approval of the settlement.

1.    The order granting preliminary approval will set the date for the hearing on the plaintiff's motion for final approval. Promptly after the entry of that order, the plaintiff shall reserve a law and motion hearing on the date set in the order.

2.  Any request for a "service," "enhancement," or "incentive" payment to a named class representative shall be supported by a declaration from the proposed recipient in which the declarant:

    a.  Describes the services performed by the declarant to further the prosecution of the action;

    b.  Estimates the time incurred by the declarant in performing those services;

    c.  Describes any risks assumed or benefits received by the declarant in prosecuting the action;

    d.  Describes any adverse consequences actually suffered by the declarant as a result of prosecuting the action; and

    e.  States the amount that the declarant expects to receive as a class member.

3.  Any request of attorney's fees shall be supported by a declaration of plaintiff's counsel that provides evidence of the total amount of time spent by counsel, a description of the work performed, the reasonableness of the fees charged and a detailed description of the costs actually incurred.  Additionally, if relevant, the request for fees shall also advise the Court whether there is an agreement about how attorney fees will be paid, including fee splitting, and whether the client(s) has been given written notice.

4.  Any request for compensation for expenses incurred by the plaintiff's attorneys shall be supported by a detailed declaration or other evidence describing the date, nature, and amount of each expense incurred.

5.  The motion shall be accompanied by a declaration from the settlement administrator. That declaration shall:

    a.  Describe both (i) the administrator's distribution of the notice, objection form, exclusion form, and any claim form, and (ii) the results thereof.  If claims are required, the declaration shall describe the number of claims received and the total value of the claims. The declaration shall clearly distinguish between valid forms and any forms that are untimely, incomplete, or otherwise invalid.

    b.  Attach and authenticate (i) a copy of the final version of the notice and of all forms enclosed with it, including the objection form, the exclusion form, and any claim form, (ii) a copy of every objection form received, and (iii) a copy of every exclusion form received. If the reasons stated on any objection form are in a language other than English, the administrator shall include a translation into English.

    c.  Describe (i) the services performed by the administrator to the date of the declaration, (ii) the time and expenses incurred to perform those services, and (iii) either the fee charged for those the services or the agreed-upon flat fee.

    d.    Describe (i) the services to be performed by the administrator after the date of the declaration, (ii) the estimated time and expenses needed to perform those services, and (iii) either the estimated fee for those the services or the agreed-upon flat fee.

6.    The motion shall be accompanied by a proposed judgment or, if counsel prefer, a proposed combined order and judgment.

7.    The judgment shall require that:

    a.    Any envelope transmitting a settlement distribution to a class member shall bear the notation, "YOUR CLASS ACTION SETTLEMENT CHECK IS ENCLOSED."

    b.    Any settlement distribution check shall be negotiable for at least 90 days but not more than 180 days from the date of mailing.

    c.    The administrator shall mail a reminder postcard to any class member whose settlement distribution check has not been negotiated within 60 days after the date of mailing.

    d.    If (i) any of the class members are current employees of the defendant, (ii) the distribution mailed to those employees is returned to the administrator as being undeliverable, and (iii) the administrator is unable to locate a valid mailing address, the administrator shall arrange with the defendant to have those distributions delivered to the employees at their place of employment.

8.    The first reference in the judgment to the settlement agreement shall include a statement of (a) the title of the settlement agreement, (b) the date the agreement was filed, and (c) the name of the document to which the agreement was attached, if any.

9.    The judgment shall state the names of any class members who excluded themselves from the settlement, if any.

10.    If multiple law firms represent the plaintiff, the judgment shall separately state the fees and expenses to be paid to each firm.

11.    If the settlement agreement provides for the distribution of any funds to a *cy pres* recipient, the judgment shall state the recipient's name and address, and shall describe the circumstances under which funds would be paid to that recipient.

12.    The judgment shall not:

    a.    Expose the class members to a potential contempt charge by barring or otherwise enjoining the class members from prosecuting the released claims.

    b.    Include a provision that the class members shall be deemed to have agreed not to sue on any released claims, or any other provision that may expose the class members to potential liability for either breach of contract or misrepresentation.

    c.    Provide for the dismissal of the action. (Cal. Rules of Court, rule 3.769(h).)

13.    The judgment may restrict the plaintiff and the defendant from offering the settlement agreement into evidence in actions between each other, but shall not purport to prevent

other parties from doing so or to otherwise predetermine its admissibility in litigation involving third parties.

14. The judgment shall describe both the text of the notice of entry of judgment to be given to the class members *California Rules of Court*, rule 3.771(b), the party or person required to give that notice, and the manner in which that notice is to be given.

15. If the Court either denies the motion for final approval or continues the hearing on the motion, and if the plaintiff thereafter files any amended proposed order or judgment, or other document in support of either that motion or a renewed motion, the plaintiff shall file a declaration authenticating a "red-lined" version of the amended document, showing how the earlier version was modified.

16. The order granting the motion for final approval shall provide a date for the Final Report (Nonappearance) Hearing and a deadline for the filing of a report concerning the amount of money distributed.

I. FINAL REPORT (NONAPPEARANCE) HEARING

Any report pursuant to *California Code of Civil Procedure* section 384(b), shall be filed within 5 court days of the nonappearance hearing and shall be in the form of a declaration from the administrator or other declarant with personal knowledge of the facts, and, if there is unpaid residue to be distributed, shall be accompanied by a proposed amended judgment. The report shall be in the form of a declaration from the settlement administrator or other declarant with personal knowledge of the facts, and to describe (i) the date the checks were mailed, (ii) the total number of checks mailed to class members, (iii) the average amount of those checks, (iv) the number of checks that remain uncashed, (v) the total value of those uncashed checks, (vi) the average amount of the uncashed checks, and (vii) the nature and date of the disposition of those unclaimed funds.

If applicable, the proposed amended judgment shall require counsel for Plaintiff to send a copy of any amended judgment which distributes funds to a cy pres recipient to the Judicial Council in compliance with *California Code of Civil Procedure* section 384.5. Further the correspondence by counsel shall include a cover letter providing the Judicial Council with the information required pursuant to *California Government Code* section 68520. Proof of Service shall be filed with the court within 15 days of the filing of the judgment.

J. MOTIONS REGARDING CLASS CERTIFICATION

1. No motion for class certification or to deny class certification shall be filed without leave of court. Before leave to file such a motion is requested, the Court expects the parties to have exhausted efforts to mediate a resolution of the case.

2.    At the time that the Court grants leave of court to file either a motion for class certification or a motion denying class certification, the Court will also establish a briefing schedule and will set a status conference on a date after the reply brief is due. At the status conference, the Court will determine the date on which the motion will be heard. The hearing date may be far enough in the future to allow for further mediation.

3.    If multiple classes or subclasses are alleged, the motion shall address the issues of definition, ascertainability and numerosity separately as to each class or subclass.

4.    If multiple class representatives are proposed, the motion shall address the issues of typicality and adequacy of representation separately as to each representative.

5.    If multiple class claims are alleged, the motion shall address the issue of whether common questions of law and fact predominate separately as to each such claim.

6.    A motion for class certification shall include:

a.    A trial plan that explains how the plaintiff will establish a prima facie case at trial. If the plaintiff intends to rely upon statistical evidence to prove any portion of any class claim, the plan shall describe that evidence and how it will be used to promote manageability. If the defendant has raised any affirmative defenses that rely upon individual evidence, the plan that explains how those defenses can be litigated.

b.    A declaration of proposed class counsel, describing his or her experience in representing a class at trial.

Harold W. Hopp
Judge of the Superior Court

Page 15 of 15

PROOF OF SERVICE

Case:   GREER vs PANDA RESTAURANT GROUP, INC.
No:     CVRI2602762

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 633 W. 5th Street, 28th Floor, Los Angeles, CA 90071

On May 28, 2026, I served the attached  **NOTICE OF ENTRY OF CLASS ACTION CASE MANAGEMENT ORDER #1** on the interested parties in this action by placing a true and correct copy thereof in sealed envelope(s) addressed as follows:

Monte H. Baier                                          Agent for Service of Process of Defendant
1683 Walnut Grove Ave,                          Panda Restaurant Group, Inc.
Rosemead, CA 91770-3711

( x  )    (BY MAIL) I placed said copy(ies) in a sealed envelope(s), postage thereon fully prepaid, and placed for collection and processing for mailing following the business's ordinary practice, with which I am readily familiar. Under that practice it would be deposited with U.S. postal service on that same day with postage fully prepaid in the city indicated below in the ordinary course of business.

(  )     (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to the offices of the address.

()       (BY E-MAIL DELIVERY) In accordance with Code of Civil Procedure 1010.6, I caused such electronic envelope to be delivered electronically to the below addressee and email address, via eservice@lexiconlaw.com

Executed on May 28, 2026, at Los Angeles, California.

(X )     (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Jackeline Valiente, declarant

NOTICE OF ENTRY OF CLASS ACTION CASE MANAGEMENT ORDER #1 | 4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2602762

**Case Name:**    GREER vs PANDA RESTAURANT GROUP, INC.

JOHN R. HABASHY
633 W. 5TH ST.
28TH FLOOR
Los Angeles, CA 90071

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 07/13/2026 | 8:30 AM | Department 1 |
| Location of Hearing: | | |
| **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-638-4172 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

| | |
|---|---|
|   | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
| | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2602762

**Case Name:**    GREER vs PANDA RESTAURANT GROUP, INC.

DAWNISHA GREER

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| **07/13/2026** | **8:30 AM** | **Department 1** |
| Location of Hearing:<br>**4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-638-4172 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CI-NOCMC
(Rev. 03/02/22)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2602762

**Case Name:**    GREER vs PANDA RESTAURANT GROUP, INC.

PANDA RESTAURANT GROUP, INC.

## NOTICE OF CASE MANAGEMENT CONFERENCE

The Case Management Conference is scheduled as follows:

| Hearing Date | Hearing Time | Department |
|---|---|---|
| 07/13/2026 | 8:30 AM | Department 1 |
| Location of Hearing: **4050 Main Street, Riverside, CA 92501** | | |

No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement and serve it on all other parties in the case.  CRC, Rule 3.725.

The plaintiff/cross-complainant shall serve a copy of this notice on all defendants/cross-defendants who are named or added to the complaint and file proof of service.

Any disqualification pursuant to CCP Section 170.6 shall be filed in accordance with that section.

**Remote Appearance at Hearing:** The court **strongly encourages** parties and counsel to appear remotely for non-evidentiary hearings in civil cases.  Pursuant to local rule 3132, persons intending to appear remotely shall notify all opposing parties of their intention to appear remotely before the hearing.  Notice may be given informally, including by telephone, email, or text message. To appear remotely, on the day of the hearing, either use your computer, mobile device, or dial (833) 568-8864 (toll free) or (669) 254-5252, when prompted enter:

Meeting ID: 160-638-4172 #
Access Code: Press the # key (no number after the #)

Please MUTE your phone until your case is called, and it is your turn to speak.  It is important to note that you must call twenty (20) minutes prior to the scheduled hearing time to check in or there may be a delay in your case being heard.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

CI-NOCMC
(Rev. 03/02/22)

Notice has been printed for the following Firm/Attorneys or Parties: CVRI2602762


HABASHY, JOHN R.                                    GREER, DAWNISHA
633 W. 5TH ST.
28TH FLOOR
Los Angeles, CA 90071


PANDA RESTAURANT GROUP, INC.